839 So.2d 1255 (2003)
Virginia Dyson SMITH, Plaintiff-Appellee,
v.
Jerome J. SMITH, Defendant-Appellant.
No. 36,910-CA.
Court of Appeal of Louisiana, Second Circuit.
March 14, 2003.
*1256 William H. Ledbetter, Jr., Bossier City, for Defendants-Appellants, The Succession of Jerome J. Smith and Marion Angela Carpenter Smith.
James D. Hall, Bossier City, for Defendant-Appellant, Bossier City Fireman's Pension and Relief Fund.
Sockrider, Bolin, Anglin, Batte & Bowers, by D. Rex Anglin, Shreveport, for Plaintiff-Appellee, Virginia Dyson Smith.
Before STEWART, PEATROSS and MOORE, JJ.
STEWART, J.
Marion Angela Carpenter Smith ("Marion") and the Succession of Jerome Smith, Sr. ("Jerome") appeal the trial court's partition of proceeds from a Deferred Retirement Option Plan ("DROP") and award of those proceeds to Virginia Dyson Smith ("Virginia"). The Bossier City Firemen's Pension and Relief Fund ("Firemen's Pension Fund") appeals the award of survivor benefits under the Firemen's Pension Fund to Virginia. Finding no merit in the appellants' claims, we affirm.

FACTS
Virginia and Jerome, a Bossier fireman, were married in 1964 and divorced in 1988. The community of acquets and gains was terminated by petition to dissolve the community on September 2, 1987. Jerome married Marion on August 8, 1992. On March 31, 1993, Jerome enrolled in DROP. On March 16, 1998, Virginia filed a suit to partition the retirement benefits and pre-retirement survivor annuity under the Firemen's Pension Fund.
Jerome died on July 14, 1999, at which time he was still employed by the Bossier Fire Department ("BFD"). He had been with the BFD since January 6, 1965. Marion was substituted in the suit as executrix of Jerome's estate along with Jerome's children. The Firemen's Pension Fund and the BFD were later brought into the suit after a successful motion for a new trial by Marion.
When Jerome died, Marion was paid the lump sum of $111,489.00, as the designated beneficiary of DROP proceeds and special legatee of the DROP proceeds under the terms of Jerome's will. Incidentally, this amount was later determined to have erroneously included interest and judgment was entered in favor of the Firemen's Pension Fund for the amount of the overpayment. Marion also received monthly retirement checks in the net amount of *1257 $1,499.23 from the Firemen's Pension Fund.
The trial court found that since the money in the retirement account contained contributions from community funds while Virginia and Jerome were married, the entire balance, including the DROP program contributions, were subject to partition under Sims v. Sims, 358 So.2d 919 (La.1978). Accordingly, the court held that Virginia was entitled to $28,817.73 representing 32.44% of the lump sum payment received by Marion as a result of the DROP program and that she receive 32.44% of any benefit due and payable under the Firemen's Pension Fund.

DISCUSSION
The issue of contention is Virginia's entitlement to the survivor benefits and DROP proceeds. In Sims v. Sims, supra, the supreme court found that a party has an interest in a former spouse's pension funds or rights when they become actually payable to or for the former spouse, in the proportion that they are attributable to the former spouse's employment during the community. The court also set forth the formula to determine a party's entitlement to a former spouse's retirement benefits. The formula directs that the community interest in an unmatured retirement plan be expressed by a fraction, the numerator of which represents the number of years of creditable service that accrued during the existence of the community and the denominator of which represents the total years of creditable service. Sims directs that this fraction representing the community interest in the pension be multiplied by one-half to determine the non-employee spouse's share of the retirement benefits. The employee spouse also receives one-half of the community fraction, as well as the full amount of the fraction representing the pre-and post-marriage years of service. See Also Bullock v. Owens, 35,078 (La.App.2d Cir.9/26/01), 796 So.2d 170; Withers v. Withers, 27,348 (La.App.2d Cir.9/27/95), 661 So.2d 529.
Survivor Benefits
In Johnson v. Wetherspoon, 96-0744 (La.5/20/97), 694 So.2d 203, the supreme court held that a former wife had a community interest in the survival benefits of her then deceased, former husband. The court also acknowledged that a "spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to the spouse's employment during the community, an asset of the community." Johnson, supra citing Sims v. Sims, 358 So.2d 919, 922 (La.1978). The appellants assert that the trial court erred by interpreting the holding in Sims that "other benefits payable by a retirement plan," also included survival benefits. The supreme court rejected this exact argument in Johnson, 694 So.2d at 206-7, noting that the Sims court stated:
[O]ur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit sharing or contract, if and when they become payable, with the spouse's interest to be recognized as one-half payments to be made insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
Finally, as the Sims court declined to distinguish between retirement benefits and survivor benefits for the purposes of a community property partition, we too reject *1258 the appellants' contentions and find that the trial court did not err by partitioning the survival benefits from the Firemen's Pension and Relief Fund.
DROP Proceeds
Similarly, we reject the appellants' contention that the trial court erred by partitioning the DROP proceeds. The appellants wish this court to follow the reasoning of Schlosser v. Behan, 98-280 (La. App. 5 Cir. 11/25/98), 722 So.2d 1129, writ denied, 98-3165 (La.3/26/99), 739 So.2d 791. In Schlosser, the fifth circuit affirmed a trial court ruling that the divorced wife was not entitled to share in the former husband's DROP fund. The husband began working for the New Orleans Police Department one month before the parties were married. They were married in February 1968 and divorced August 1976. He entered the DROP program in 1993 and retired in 1996. He worked more than 25 years with the police department prior to entering the DROP program. He was married for 8½ years. The fifth circuit found that, primarily because the husband did not enter the DROP program until 17 years after the termination of the community, the wife was precluded from receiving a portion of the former husband's DROP benefits.
The reasoning of Schlosser has been criticized in Kenneth Rigby, Matrimonial Regimes: Recent Developments, 60 L.La. Rev. 405 (2000) This court has consistently held that such proceeds are subject to community property division. McKinstry v. McKinstry, 36,285 (La.App.2d Cir.8/14/02), 824 So.2d 1260. Moreover the reasoning of Schlosser was specifically rejected by this court in Bullock v. Owens, 35,078 (La.App.2d Cir.9/26/01), 796 So.2d 170, and rejected by the third and fourth circuits in Sullivan v. Sullivan, 01-0006 (La.App. 3d Cir.6/13/01), 801 So.2d 1093 and Zalfen v. Albright, XXXX-XXXX (La. App 4 Cir. 7/18/01), 791 So.2d 800. The lynchpin of this conclusion rests upon the fact that even if a former spouse enters the DROP program after the termination of the community, the non-participating spouse is entitled to the portion of the funds that are attributable during the life of the community and such funds are subject to division according to the Sims formula. McKinstry, supra.
Consequently, we find that the trial court properly partitioned the DROP proceeds and the survival benefits in favor of Virginia Smith.

CONCLUSION
Based on the foregoing, we affirm the trial court. Costs are assessed to the appellants.
AFFIRMED.